### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Jose Rodriguez-Aguilar, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a criminal complaint charging Scott Bagley (DOB xx/xx/1965) with conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1349 and 1344, and with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since June 2022. I am currently assigned to the Boston Division, Bangor Resident Agency, of the FBI. As part of my duties, I investigate crimes involving the sexual exploitation of minors, interstate threats, interstate stalking, interstate domestic violence, Hobbs Act robberies, wire fraud, identity theft, and many other criminal violations. I received training on the proper investigative techniques for these violations, including the use of surveillance techniques, undercover activities, and the application and execution of arrest and search warrants.

3. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for federal criminal offenses. The FBI has jurisdiction to investigate offenses arising under 18 U.S.C. §§ 1349 and 1344, that involve conspiracy to commit bank fraud, and 18 U.S.C. § 1028A(a)(1), that involve aggravated identity theft.

4. The facts set forth in this affidavit are based upon my personal knowledge, information obtained during my participation in this investigation including

information provided by other investigators, my review of records related to this investigation, and information gained through my training and experience. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested complaint and arrest warrant.

## PROBABLE CAUSE

5. I am aware that on October 1, 2024, Maine Drug Enforcement Agency (MDEA) Special Agent Steven Saucier obtained and executed a state search warrant at the residence of Brandon Bautista and Lacey Sockabasin at 247 Ohio Street, apartment 3, in Bangor, Maine, following a months-long drug trafficking investigation. During the search, agents located and seized quantities of methamphetamine, fentanyl, xylazine, and other substances, in addition to three handguns, approximately $121,973 in U.S. currency, and several cell phones, among other things.

6. On October 2, 2024, Officer Jake Whitley with the Waterville Police Department observed Scott Bagley (xx/xx/1965) (hereinafter "Bagley") operating a motor vehicle. Officer Whitley recognized Bagley and knew Bagley did not have a valid driver's license. Officer Whitley stopped Bagley and arrested him for operating without a license and violating conditions of release. During an inventory search of the vehicle, Sergeant Ryan Dinsmore found a New Jersey license in the name of S.H. with Bagley's photograph on it.

7. On October 7, 2024, while MDEA Special Agent ("SA") Adam Oko was reviewing photographs from the search of the Bangor residence on October 1, he observed a photograph of a Maine driver's license (in the name of a local law enforcement officer with the Maine State Police) inside the residence, three Florida

2

driver's licenses, an American Express Delta SkyMiles credit card in the officer's name, and additional bank or credit cards. SA Oko showed Drug Enforcement Administration Special Agent Nicholas Rich the photograph of the male on the Maine driver's license and SA Rich said he believed the male was Bagley. The Maine State Police officer went to the MDEA office and looked at the photograph of the Maine driver's license that was in his name. The officer confirmed that the information on the driver's license was his, but that it wasn't him in the photograph. The officer also confirmed that he owned an American Express credit card for Delta SkyMiles.

      8.    On October 7, 2025, SA Saucier obtained and executed a second search warrant at the Bangor residence (247 Ohio Street, Apartment 3, Bangor, Maine) for identity documents and financial cards not belonging to Brandon Bautista or Lacey Sockabasin. During that search, agents located and seized the Maine driver's license in the officer's name. A screenshot of the seized driver's license appears below:



During the search, agents also seized three Florida driver's licenses, three American Express Delta SkyMiles cards (one of which was in the officer's name), and a TD Bank card from the residence, none of which were in Bautista's or Sockabasin's names.

9.  As part of his investigation, Detective Brad Chase with the Maine Bureau of Motor Vehicles (BMV), Division of Enforcement Services looked into the authenticity of the Maine driver's license in the officer's name that was seized on October 7. Using the Maine BMV driver's license database, in addition to Bagley's Facebook page, Detective Chase was able to positively identify the male on the Maine driver's license as Bagley.

10. On October 22, 2024, Detective Chase interviewed Bagley in a non-custodial setting in Bangor, Maine. Detective Chase showed Bagley a picture of the fraudulent Maine driver's license in the officer's name, and Bagley admitted that the picture on the license was of him. Bagley claimed he had arranged to pay two males $700 for the fraudulent license. On that date, October 22, Detective Chase served Bagley with a summons for fraud or falsity on documents, in violation of Maine state law.

11. On December 30, Officer Nicholas McLeod with Bangor PD stopped a vehicle at the request of MDEA, and Bagley was a passenger inside the vehicle. Officer McLeod asked Bagley for his identification and Bagley provided a Connecticut driver's license in name of W.E. to the officer. The MDEA agent on scene was familiar with Bagley and confirmed Bagley's identity. Officer McLeod arrested Bagley on outstanding arrest warrants and searched him. The officer located a social security card in W.E.'s name in Bagley's pocket. I am aware that the male in the photograph on the Connecticut license (in the name of W.E.) is Bagley. I am familiar with Bagley's appearance from reviewing known photographs of Bagley, including his photograph with Maine BMV, and from interacting with him. During a search of the vehicle, an EBT

4

card in M.H.'s name and a checkbook in B.M.'s name were also found inside the vehicle. A screenshot of the Connecticut driver's license in W.E.'s name with Bagley's photograph on it appears below:



12.     Following Bagley's arrest, MDEA SA Saucier interviewed Bagley post-Miranda.  During this recorded interview, Bagley said that he was getting fake ids from a person he identified by name, who will be referred to as COCONSPIRATOR 1.  Bagley said he met COCONSPIRATOR 1 a few months before COCONSPIRATOR 1's arrest in the fall of 2024.  From my investigation, I am aware that COCONSPIRATOR 1 is a real person, COCONSPIRATOR 1 was arrested in the fall of 2024 by law enforcement, and that COCONSPIRATOR 1 was residing in Bangor, Maine, prior to his arrest.

13.     During the interview, Bagley said that COCONSPIRATOR 1 took Bagley's photograph in front of a white wall and told him it would take three to five days for the fake id.  According to Bagley, COCONSPIRATOR 1 was obtaining false identity documents and bank cards from New York.  Bagley said that COCONSPIRATOR 1 hires or uses local drug users to go into banks and open fraudulent bank accounts using an

actual bank customer's name and information.  Bagley said that COCONSPIRATOR 1 approached him about this option of going into banks to help pay off a drug debt that Bagley owed COCONSPIRATOR 1.

14.     Bagley admitted that he went into Bank A[1] on several occasions for COCONSPIRATOR 1, and he opened between five to ten "fake" bank accounts in other people's names.  Bagley explained that he would receive two forms of identification from COCONSPIRATOR 1, usually a fake driver's license and a fake credit card because banks required two forms of id.  He would then enter Bank A, use the fake id to open a savings or checking account in the customer's (victim's) name, and then receive a debit card from the bank.  Once he had access to the bank account, Bagley said that they were able to transfer money from the accounts.  Bagley said after getting the debit card, he would withdraw money from the customer's account but keep it under a certain amount to avoid being "flagged."  Bagley said that COCONSPIRATOR 1 would tell him how much money to withdraw from each account and that COCONSPIRATOR 1 knew how much was in the bank accounts and was able to transfer money between accounts.

15.     During the interview, Bagley said that COCONSPIRATOR 1 would give him, and other people doing this for COCONSPIRATOR 1, 20 percent of the withdrawal amount to keep, minus expenses or debt.  Bagley also said that COCONSPIRATOR 1 had him purchase phones at T-Mobile and then COCONSPIRATOR 1 would program the phones.  When Bagley opened a new bank account, the new phone number would be linked to the account for verification.

---

[1] I am aware that Bank A is a financial institution that has branches in the District of Maine and elsewhere, and that Bank A's deposits were insured by the Federal Deposit Insurance Corporation ("FDIC") in 2024.

16. According to Bagley, he traveled as south as South Carolina to do this with COCONSPIRATOR 1 and that COCONSPIRATOR 1 would drive him. Bagley said he knows of at least four other people that are working for COCONSPIRATOR 1 in this way. After they were done with a particular account, COCONSPIRATOR 1 would take back the fictitious license or other cards from Bagley.

17. On January 3, 2025, MDEA SA Saucier obtained and executed state search warrants on several phones, including two phones seized from COCONSPIRATOR 1 in the fall of 2024. The state search warrant authorized the forensic examination of both phones. During my investigation, I reviewed a copy of the device extractions for both of COCONSPIRATOR 1's phones. Through that review, I found evidence on one of COCONSPIRATOR 1's phones of: what appeared to be open-source research of personal identifiable information (PII) of specific individuals; images of a financial breakdown of various bank accounts and financial accounts, including full account numbers and total account balances; images of U.S. currency within multiple Bank A envelopes; and various "mug shot" style photographs of individuals standing in front of a white wall, including photographs of Bagley. On COCONSPIRATOR 1's other phone, I found "mug shot" style photographs of individuals standing in front of a white wall, including photographs of Bagley; an image of COCONSPIRATOR 1 posing and holding a large stack of U.S. currency; and images of bank account information of Bank A customers, including account numbers and account balances.

18. In response to legal process, Bank A has produced records showing that Victim A is a customer of Bank A. I am aware that Victim A is a resident of New Hampshire. In March 2025, I met with Victim A and his wife at their residence in New

Hampshire. Victim A's wife said that on about August 23 or 24, 2024, she noticed that there were various "phone transfers" listed in their Bank A account records. Victim A's wife spoke with Bank A and then they both went to their local Bank A branch. During the interview, they said a representative from Bank A told them that someone had used a physical driver's license to impersonate Victim A at Bank A locations in other states, including Maine and Massachusetts, and withdraw money from their account. They were also told that someone had also opened a new bank account ending -5600 in Victim A's name and linked it to their existing bank account. After reviewing their bank account records, Victim A and his wife believed that about $56,300 had been stolen from them, and they said that Bank A had reimbursed them for their loss.

19.     In response to legal process, Bank A has produced records showing that Victim B is a customer of Bank A. I am aware that Victim B is a resident of New Jersey. In April 2025, FBI Special Agent Ruslan Allakhverdov and Senior Financial Investigator Monica Weyler interviewed Victim B and his wife at the FBI South Jersey Resident Agency office. Victim B and his wife were aware that their Bank A accounts had been compromised and that their funds were stolen. Victim B's wife said that she noticed substantial deductions in their accounts and contacted Bank A. They said that they conduct all of their banking transactions in New Jersey and have never made transactions in Massachusetts or Maine. Victim B said that a fraudulent bank account was opened in his name with Bank A without his permission and that that he did not open a Bank A account in his name ending -7094. During the interview, Victim B and his wife were shown signature cards for their Bank A accounts. Victim B said that it was "definitely not" his signature on the signature card for the account ending -7094. Victim

B and his wife identified several fraudulent transactions and withdrawals from their accounts, including a $9,100 withdrawal on August 21, 2024.

20. In response to legal process, Bank A has produced records showing that Victim C is a customer of Bank A. From these records and from other queries, I am aware that Victim C is a resident of Vermont.

21. In response to legal process, Bank A produced financial records and video footage showing that:

    a. On August 20, 2024, a new checking account ending -5600 was opened with Bank A in Victim A's name at a Bank A location in Massachusetts. Victim A's name appears to be signed on the signature line to open the account, and Bank A records show that a New Hampshire driver's license in Victim A's name was listed under the "Identification" section of Bank A's records relating to the new account.

    b. On August 20, 2024, Bagley entered a Bank A branch in Haverhill, Massachusetts, and withdrew $7,500 from Victim A's bank account. A screenshot of the video footage associated with this transaction from Bank A appears below:



Based on my investigation, I believe that Bagley is the male depicted in the

footage above and involved in the transaction.

c. On August 21, 2024, a new checking account ending -7094 was opened with Bank A in Victim B's name at a Bank A location in Massachusetts. Victim B's name appears to be signed on the signature line to open the account, and Bank A records show that a New Jersey driver's license in Victim B's name was listed under the "Identification" section of Bank A's records relating to the new account.

d. On August 21, 2024, Bagley entered a Bank A branch in Methuen, Massachusetts, and withdrew $9,100 from Victim B's bank account. A screenshot of the video footage associated with this transaction from Bank A appears below:



Based on my investigation, I believe that Bagley is the male depicted in the footage above and involved in the transaction.

e. On August 5, 2024, a new checking account ending -7047 was opened with Bank A in Victim C's name at a Bank A location in Maine. Victim C's name appears to be signed on the signature line to open the account, and Bank A

records show that a Vermont driver's license in Victim C's name was listed under the "Identification" section of Bank A's records relating to the new bank account.

f. On August 6, 2024, Bagley entered a Bank A branch in Newport, Maine, and withdrew $7,200 from Victim C's bank account. A screenshot of the video footage associated with this transaction from Bank A appears below:



Based on my investigation, I believe that Bagley is the male depicted in the footage above and involved in the transaction.

22. Additionally, my investigation shows that once a new account was opened in a Bank A customer's name, Bagley and others were able to "link" the new account with or access and withdraw funds from the customers' other accounts with Bank A.

23. Based on my training and experience, and based on information obtained during the investigation, it is my understanding that in order to open a new bank account with Bank A, an individual is required to produce identification. Additionally, Bagley would have had to represent himself as Victim A, Victim B, and Victim C, in order to make the above withdrawals from their respective accounts.

24. In summary, the above evidence shows that Bagley agreed with COCONSPIRATOR 1, and with persons known and unknown, to execute a scheme to defraud Bank A and to obtain funds from Bank A accounts based on false and fraudulent pretenses, representations, and promises, including by obtaining false and fictitious identification documents in the names of legitimate Bank A customers and then using those identification documents at Bank A branch locations in the New England area to access the customers' bank accounts and withdraw funds from those accounts.

25. Additionally, the above facts show that Bagley knowingly possessed and used, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), that is, conspiracy to commit bank fraud. Specifically, Bagley used Victim A, Victim B, and Victim C's names during the above transactions in an attempt to access their bank accounts at Bank A and withdraw funds from their accounts.

26. As a result, there is probable cause to believe that Bagley committed the offenses of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1349 and 1344, and with aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

## CONCLUSION

27. Based on the foregoing, I submit that probable cause exists to believe that beginning in about July 2024 and continuing through about October 1, 2024, Scott Bagley committed the offenses of conspiracy to commit bank fraud, in violation of 18 U.S.C. §§ 1349 and 1344, and on about August 20, 2024, he committed aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). I respectfully request that the Court issue a criminal complaint charging him with this offense.

Dated at Bangor, Maine, this 28th day of August, 2025.

Jose Rodriguez-Aguilar
Special Agent
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Sep 03 2025

City and state: Bangor, ME

John C Nivison U.S. Magistrate Judge
*Printed name and title*

13